IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Ronald Thomas,<br><br>   *Plaintiff,*<br><br>v.<br><br>City of Philadelphia, et al.,<br><br>   *Defendants.* | CIVIL ACTION<br>NO. 24-4914 |

**Pappert, J.**                                February 25, 2025

## MEMORANDUM

  Ronald Thomas was twice convicted for the first-degree murder of Anwar Ashmore, and twice his conviction was overturned on direct appeal. The second conviction was overturned in the wake of an indictment against Philadelphia Detective Philip Nordo—who allegedly played a central role in the investigation of Ashmore's murder—for sexual assault and other misconduct while interviewing witnesses and suspects in homicide cases. Thomas eventually pleaded guilty to third-degree murder and a sentence that was lower than the total time he served while his trials and appeals were pending. He now sues Nordo and two other detectives—Tracy Byard and Billy Golphin—under 42 U.S.C. § 1983 for violations of his civil rights and conspiracy to violate his civil rights. He also asserts a *Monell* claim against the City of Philadelphia.

  Byard and Golphin moved to dismiss the civil-rights and conspiracy claims on the ground that Thomas has not alleged sufficient facts to make out those claims, and they argue in the alternative that Thomas's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). The City also seeks dismissal of the *Monell* claim on the ground

1

that Thomas has not pleaded any violation of his rights. The Court grants the motion in part and denies it in part.[1]

I

In April of 2010, Anwar Ashmore was shot and killed in Philadelphia. (Compl. ¶ 17.) As Philadelphia police investigated the shooting, they spoke with four key witnesses—Troy Devlin, Raphael Spearman, Jeffrey Jones, and Kaheem Brown—each of whom implicated Thomas. (*Id.* ¶ 19.) Thomas alleges, however, that each witness was coerced into giving a statement, "primarily by Detectives Nordo and Nathan Williams." (*Id.*)

Devlin was the first to be interviewed, most of which Nordo apparently conducted alone. (*Id.* ¶¶ 21–23, 62.) Nordo promised Devlin money in exchange for signing a pre-written statement that implicated Thomas, and he threatened that the police would charge Devlin and his friends with conspiracy to commit murder if he did not sign the statement. (*Id.* ¶ 62.) Byard and Golphin were seemingly both present for at least the last thirty to forty-five minutes of the interview. (*Id.* ¶¶ 62, 70.) And while it's not clear from the Complaint whether either of them witnessed Nordo make any threats or promises, Byard would later testify at the second trial that "Devlin provided each answer and signed the statement without coercion." *Commonwealth v. Thomas*, 2898 EDA 2018, 2020 WL 2918971, at *2 (Pa. Super. Ct. June 3, 2020) (*Thomas II*). Jones was interviewed a few hours after Devlin, also by Nordo. (*Id.* ¶ 23.) Nordo

---

[1] Thomas's Complaint lists "damages" and "punitive damages" as separate counts in his Complaint. The Defendants correctly point out that these are not causes of action, but rather potential remedies for a cause of action. *See, e.g., Seubert & Assocs., Inc. v. Ambassador Grp. LLC*, 648 F. Supp. 3d 597, 615 (W.D. Pa. 2022). The Court grants the motion with respect to the counts which seek to bring individual claims for "damages" and "punitive damages." The Court denies the motion in all other respects.

offered Jones "significant inducements" to sign a pre-written statement implicating Thomas, "including monetary rewards, moving him to another neighborhood, ensuring that no new charges would be filed against him, and ensuring that he was not arrested for his then-current bench warrant." (*Id.* ¶¶ 74, 93 n.3.) Byard later testified at the second trial that he was present for Jones's entire interview and that Jones's statement was entirely voluntary. *Thomas II*, 2020 WL 2918971, at *3.

Spearman was the next to be interviewed. (*Id.* ¶ 26.) Nordo "took the lead," and Golphin also participated. (*Id.* ¶ 32.) During the interview, Nordo threatened Spearman that if he did not give a statement, the police would arrest all his friends and charge them with Ashmore's murder. (*Id.* ¶¶ 33, 47.) Brown was interviewed last. (*Id.* ¶ 27.) Detective Nathan Williams and Detective Peters[2] conducted the interview, during which they "slapped and otherwise physically and psychologically abused" Brown before asking him to sign a pre-written statement implicating Thomas. (*Id.* ¶ 28.)

Thomas was first tried for Ashmore's killing in 2013. *See* (*id.* ¶ 53.) He alleges that as part of its case, the prosecution introduced the coerced statements made by Spearman and Brown. (*Id.* ¶¶ 43, 54.) The jury ultimately convicted Thomas of first-degree murder and possession of an instrument of crime. (*Id.* ¶ 53.) The Superior Court reversed the conviction, however, holding that the trial court erred in admitting hearsay statements and irrelevant rap lyrics. *Commonwealth v. Thomas*, No. 1121 EDA 2013, 2015 WL 6457805, at *6–7 (Pa. Super. Ct. Oct. 2, 2015). Thomas was then retried in 2018. (*Id.* ¶ 55.) At the second trial, the prosecution introduced the

---

[2]     Thomas does not give Peters's first name.

3

inculpatory statements of all four witnesses. *See Thomas II*, 2020 WL 2918971, at \*2–5. That conviction was also reversed on direct appeal when the prosecution agreed that a remand and retrial was appropriate in light of Nordo's then-recent indictment. (Compl. ¶¶ 59–61.)

The Conviction Integrity Unit in the Philadelphia District Attorney's Office reviewed the case and determined that Nordo had engaged in misconduct while interviewing Devlin, Jones and Spearman; that the prosecution's failure to turn over evidence of that misconduct to the defense violated *Brady v. Maryland*, 373 U.S. 83 (1963); and that the case should be retried. (Compl. ¶¶ 66, 71.) Rather than be retried, however, Thomas agreed to plead guilty to third-degree murder with a maximum sentence of ten years' imprisonment. (*Id.* ¶ 100.) Because Thomas had already served fourteen years in jail, he was released immediately. (*Id.*)

II

To avoid dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain facts sufficient to state a claim that is facially "plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the factual allegations permit a court to make the reasonable inference that the defendant is liable for the alleged misconduct. *Id.* The "mere possibility of misconduct" is not enough; the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678–79 (quoting *Twombly*, 550 U.S. at 570).

Determining plausibility is a "context-specific task" requiring a court to use its "judicial experience and common sense." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780,

786–87 (3d Cir. 2016). In making this determination, the court assumes well-pleaded facts are true, construes those facts in the light most favorable to the plaintiff, and draws reasonable inferences from them. *Id.* at 790. The plaintiff need only allege enough facts to "raise a reasonable expectation that discovery will reveal evidence" of each element of his claim. *Connelly*, 809 F.3d, at 788–89. But "[c]onclusory assertions of fact and legal conclusions," are not entitled to the presumption of truth. *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016). So "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678, (quoting *Twombly*, 550 U.S. at 555).

In addition to the allegations in the complaint itself, the Court can review documents attached to the complaint and matters of public record, which include judicial proceedings and opinions. *McTernan v. City of York, Penn.*, 577 F.3d 521, 526 (3d Cir. 2009); *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 256 n.5 (3d Cir. 2006).

### III

Byard and Golphin first seek dismissal of the claims against them on the ground that Thomas has not alleged their personal involvement in any violation of his federal rights. (Mot. to Dismiss 4, ECF No. 10.) The Court's analysis proceeds in two steps. First, the Court must "identify the exact contours of the underlying right" and determine whether the plaintiff "has alleged a deprivation" of that right. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015).[3] Second, the Court must determine whether the plaintiff has alleged the defendant's "personal involvement in

---

[3]   The detective defendants argue only that Thomas has not alleged personal involvement; they do not dispute that Thomas has alleged a violation of his rights. *See* (Mot. to Dismiss 4–6.)

5

the alleged wrongs." *Id.*  A defendant who did not actually participate in the wrongful conduct may only be liable if the defendant (1) was a policymaker who promulgated an unlawful policy that caused the deprivation of the plaintiff's right, or (2) either "directed" the deprivation or, "as the person in charge, had knowledge of and acquiesced" in the deprivation. *A.M. v. Luzerne County Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).  A plaintiff must plead each defendant's involvement with "appropriate particularity" to ensure that government officials are held liable only for their own misconduct. *Scheing v. Fountain*, 729 F. App'x 175, 178 (3d Cir. 2018).

Thomas claims that Byard and Golphin violated his rights under the Due Process Clause of the Fourteenth Amendment. (Compl. Count I.)  Specifically, he says they violated his right not to be subjected to a criminal trial in which the prosecution uses fabricated evidence or deliberately deceives the court.[4]  (*Id.*)  To state a claim, Thomas must plausibly allege that the relevant defendant willfully, knowingly or recklessly "formulated or submitted false evidence" that was introduced at trial, *Mervilus*, 73 F.4th at 194, or that the relevant defendant otherwise "knowingly deceived the court and jury" by, for example, "concealing evidence," *Dennis*, 19 F.4th at 291.  Examples of actionable conduct include writing a false confession and coercing a suspect into signing it, *Halsey v. Pfeiffer*, 750 F.3d 273, 284, 289 (3d Cir. 2014), knowingly giving false testimony against a defendant, *Curran v. Delaware*, 259 F.2d

---

[4]  Thomas styles his due process claim as two separate claims—one for fabrication of evidence and one for deliberate deception—but the Court treats them together because Thomas complains of the same conduct in asserting the two claims, *see* (Compl. Count I), and because the legal standards significantly (if not entirely) overlap.  Indeed, the Court of Appeals has said that both "fabrication" and "deliberate deception" encompass the knowing use of false evidence by detectives, *see Dennis v. City of Philadelphia*, 19 F.4th 279, 291 (3d Cir. 2021); *Mervilus v. Union Cnty.*, 73 F.4th 185, 194 (3d Cir. 2023), which is what Thomas alleges here.  The rights also have a common origin in *Mooney v. Holohan*, 294 U.S. 103 (1935) (per curiam) and *Pyle v. Kansas*, 317 U.S. 213 (1942).  *See Dennis*, 19 F.4th at 292; *Mervilus*, 73 F.4th at 196.

707, 713 (3d Cir. 1958), and deliberately concealing evidence that would reveal a witness's mistaken memory and bolster the defendant's alibi, *Dennis*, 19 F.4th at 284, 292.

With the contours of the underlying right in mind, Thomas has adequately pleaded both Byard's and Golphin's personal involvement in the alleged fabrication and deception. Beginning with Golphin, the Complaint alleges that he interviewed Spearman with Nordo, (Compl. ¶ 32); *see also Thomas II*, 2020 WL 2918971, at *4, permitting the inference that Golphin witnessed Nordo coerce Spearman into implicating Thomas. And Golphin later testified that "the detectives did not make any promises or use any coercion to induce Spearman to sign the statement." *Thomas II*, 2020 WL 2918971, at *4. For his part, Detective Byard apparently witnessed at least some of Nordo's interview with Devlin and all of Nordo's interview with Jones. *Id.* at 2–3. During those interviews, Nordo allegedly threatened Devlin with criminal charges if he did not implicate Thomas and promised Jones money and other inducements if he did. (Compl. ¶¶ 62, 74.) Yet Byard testified at Thomas's second trial that no one threatened either witness or promised anything in exchange for a statement. *Thomas II*, 2020 WL 2918971, at *2–3. Thomas has thus specifically alleged that both Golphin and Byard gave knowingly false testimony against him at trial, which constitutes personal participation in the violation of his due process rights. *See Curran*, 259 F.2d at 714.

## IV

Byard and Golphin also seek dismissal of Thomas's claim against them for conspiracy to violate civil rights. (Mot. to Dismiss 7.) There are three elements to a

civil-rights conspiracy: (1) two or more persons agree to deprive the plaintiff of a right; (2) one or more of the conspirators performs an "overt act in furtherance of the conspiracy"; and (3) the "overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States, with the added gloss under § 1983 that the conspirators act under the color of state law." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 n.15 (3d Cir. 2018). Courts typically allow claims for civil-rights conspiracy past the motion-to-dismiss stage when, as here, the plaintiff has adequately alleged a claim for the underlying civil-rights claim. *Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety*, 411 F.3d 427, 446 (3d Cir. 2005), *overruled on other grounds by Dique v. N.J. State Police*, 603 F.3d 181, 183 (3d Cir. 2010)); *Natividad v. Raley*, No. CV 22-5061, 2023 WL 7412931, at *6 (E.D. Pa. Nov. 9, 2023).

As explained, Thomas has alleged that Byard and Golphin personally participated in the alleged violation of his due process rights, so he has adequately pleaded the second and third elements of his conspiracy claim. As to the first element, Thomas must "assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). Such facts may include that the "alleged conspirators did or said something to create an understanding, the approximate time when the agreement was made, the specific parties to the agreement, the period of the conspiracy, and the object of the conspiracy." *Jutrowski*, 904 f.3d at 295 (cleaned up). When the alleged conspiracy is among police officers, facts suggesting agreement may also include "conversations between officers about the incident, allegedly distorted stories that emerged, an

awareness of conflicting stories and irregularities in the series of official investigations into the incident." *Id.*

Thomas here alleges that Byard and Golphin worked together with Nordo to investigate Ashmore's murder from the outset and continued to work together with the prosecution all the way through at least Thomas's second trial. (Compl. ¶ 18); *Thomas II*, 2020 WL 2918971, at *2–5. During the course of the investigation, Nordo allegedly coerced three different witnesses into giving statements that implicated Thomas, and another detective allegedly coerced a fourth witness to do the same. (Compl. ¶¶ 28, 33, 62, 74, 94 n.3.) Byard and Golphin apparently not only knew of the coercion, but also lied to the jury about it. *Thomas II*, 2020 WL 2918971, at *2–4. There also seem to be irregularities in the stories told by law enforcement; for example, the prosecution at one point represented to the state court that Nordo was alone with Devlin "for some period of time," (Compl. ¶ 62), yet Byard's testimony that Nordo did not coerce Devlin into making his statement, *Thomas II*, 2020 WL 2918971, at *2, implies that Byard was present during Devlin's entire interview. In sum, Thomas has fairly alleged that Byard and Golphin were not only key players in an investigation that culminated in the use of fabricated evidence and/or deliberate deception at Thomas's trials, but also that they sought to cover up the improprieties and in so doing produced inconsistent accounts about the investigation. From that the Court can plausibly infer that Byard and Golphin reached an agreement (among themselves or with others) to fabricate evidence and/or deceive the court.

V

The detective Defendants also seek dismissal on the ground that Thomas's claims are barred by *Heck v. Humphrey*, 512 U.S. at 486–87. (Mot. to Dismiss 8.) *Heck* holds that a plaintiff may not "recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," unless that conviction or sentence has already been invalidated through, for example, successful appeal. *Id.* A claim is thus *Heck*-barred if its success "would necessarily imply the invalidity" of a not-yet-overturned conviction or sentence. *Id.* at 487. Determining whether a claim is barred by *Heck* can be tricky in what courts call "two-conviction" cases, where the plaintiff's original conviction(s) were overturned but he was subsequently re-convicted. *See Dennis v. City of Philadelphia*, 379 F. Supp. 3d 420, 428–29 (E.D. Pa. 2019). The Third Circuit has not addressed a two-conviction case, so courts in this District have generally taken guidance from decisions in other circuits—in particular the Second Circuit's *en banc* opinion in *Poventud v. City of New York*, 750 F.3d 121 (2d Cir. 2014). *See Dennis*, 379 F. Supp. 3d at 429; *Gladden v. City of Philadelphia*, No. CV 21-4986, 2022 WL 605445, at *4 (E.D. Pa. Feb. 28, 2022); *Maldonado v. City of Philadelphia*, No. CV 22-3474, 2023 WL 4685967, at *6 (E.D. Pa. July 21, 2023); *Carson v. City of Philadelphia*, No. CV 23-2661, 2024 WL 3792223, at *4 (E.D. Pa. Aug. 13, 2024).

In *Poventud*, the plaintiff had originally been convicted of attempted murder and related crimes, but that conviction was vacated on collateral review based on a violation of *Brady*, 373 U.S. 83, and the plaintiff subsequently pleaded guilty to the lesser charge of attempted robbery. 750 F.3d at 124. The Second Circuit held that Poventud's § 1983

10

suit for damages arising out of the *Brady* violation was not *Heck*-barred because success on the *Brady* claim would not be at odds with his guilty plea. *Id.* at 134–35. Indeed, the plaintiff's success on his *Brady* claim would have only meant that his first trial was unfair, not that he was innocent. *Id.* at 134 ("the remedy for a *Brady* claim is … a new trial, as proof of the constitutional violation need not be at odds with his guilt"). Plus, the *Brady* violation could not possibly have influenced anything that occurred after his first conviction was vacated because "by definition," the defendant would "have been made aware of the *Brady* material before *vacatur*." *Id.* The "legal status of [the plaintiff's] guilty plea," therefore, "would remain preserved" even if he succeeded on his *Brady* claim for damages under § 1983. *Id.* at 138. The Second Circuit's analysis makes sense in light of the Supreme Court's effort to "stress the importance of the term 'necessarily'" when it says that the *Heck* bar applies to claims that "*necessarily* imply that the plaintiff's conviction was unlawful." *Nelson v. Campbell*, 541 U.S. 637, 647 (2004) (emphasis in original).

Here, Thomas's 2013 and 2018 convictions for first-degree murder were overturned on direct appeal and he subsequently pleaded guilty to third-degree murder. (Compl. ¶¶ 2, 4, 6, 61.) The Defendants argue that Thomas's due process claims are *Heck*-barred because if Thomas succeeds, he will "undermine[] … his guilty plea." (Mot. to Dismiss 8–9.) Specifically, they assert that because Thomas claims detectives fabricated evidence of his guilt, a judgment in his favor would suggest that he is actually innocent. (*Id.*) That argument misunderstands both *Heck* and the due process right against being tried with fabricated evidence and deliberate deception.

11

Again, *Heck* only bars Thomas's claim if it "*necessarily* impl[ies] that [his] conviction was unlawful." *Nelson*, 541 U.S. at 647 (emphasis in original). And as with a *Brady* violation, the normal remedy for fabrication and deliberate deception is not acquittal, but a new trial. *See Smith v. United States*, 599 U.S. 236, 241–42, 242 n.3 (2023).[5] Accordingly, when the state obtains a conviction at a trial in which it deliberately deceived the court or introduced fabricated evidence, the deception or fabrication renders *that* conviction invalid but does not necessarily imply anything about the validity of a subsequent one. And Thomas's only valid conviction here (his guilty plea to third-degree murder) occurred *after* the alleged fabrication and deception came to light, so his claims of fabrication and deception in the prior trial(s) are not necessarily inconsistent with his guilt.[6]

## VI

The City also seeks dismissal of Thomas's *Monell* claim. Pursuant *to Monell v. Department of Social Servs.*, 436 U.S. 658, 691 (1978), a plaintiff seeking to hold a municipality liable under § 1983 must show that the violation of his federal rights was caused by either a policy or a custom of the municipality. *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 220 (3d Cir. 2014). The City purports to seek dismissal on the ground that Thomas has not pleaded an underlying violation of any federal right, but it

---

[5] As the Defendants see it, Thomas "cannot succeed on his fabrication or deliberate deception claims without raising a reasonable doubt respecting guilt." (Mot. to Dismiss 8.) Not so. A plaintiff claiming fabrication or deception generally must show "a reasonable likelihood" that he would not have been convicted absent the fabrication or deception. *Black v. Montgomery Cnty.*, 835 F.3d 358, 370 (3d Cir. 2016); *cf Giglio v. United States*, 405 U.S. 150, 154 (1972) ("reasonable likelihood" standard for *Brady* claims). Finding a reasonable likelihood that a reasonable juror could have reasonable doubt is not, as the defendants contend, the same as finding reasonable doubt of guilt.

[6] To be sure, much of Thomas's complaint does appear to assert his innocence. *See, e.g.*, (Compl. ¶¶ 37, 66, 67, 101.) If his claims here depended on his innocence, *Heck* would indeed bar them. *Accord Poventud*, 750 f.3d at 138. They do not.

12

offers in support only a cross-reference to the arguments raised by Byard and Golphin and the assertion that "where plaintiffs have no viable claim against any individual officer, they cannot have a *Monell* claim." (Mot. to Dismiss 9.)  This argument ignores the fact that Detective Nordo would remain a defendant in this case regardless of the Court's ruling on the claims against Byard and Golphin.  And anyway, the Court has rejected the arguments raised by Byard and Golphin.

    An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*

Gerald J. Pappert, J.
