**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Sherman McCoy, | |
| *Plaintiff,* | CIVIL ACTION NO. 21-1458 Lead Case |
| v. | |
| City of Philadelphia, et al., | |
| *Defendants.* | |
| Jamaal Simmons, | |
| *Plaintiff,* | CIVIL ACTION NO. 19-1648 |
| v. | |
| City of Philadelphia, et al., | |
| *Defendants.* | |
| James Frazier, | |
| *Plaintiff,* | CIVIL ACTION NO. 19-1692 |
| v. | |
| City of Philadelphia, et al., | |
| *Defendants.* | |
| Arkel Garcia, | |
| *Plaintiff,* | CIVIL ACTION NO. 21-2884 |
| v. | |
| City of Philadelphia, et al., | |
| *Defendants.* | |

Marvin Hill,

        *Plaintiff,*

    v.

City of Philadelphia, et al.,

        *Defendants.*

CIVIL ACTION
NO. 23-1002

---

Rafiq Dixon,

        *Plaintiff,*

    v.

City of Philadelphia, et al.,

        *Defendants.*

CIVIL ACTION
NO. 23-1650

---

Dwayne Handy,

        *Plaintiff,*

    v.

City of Philadelphia, et al.,

        *Defendants.*

CIVIL ACTION
NO. 24-1905

---

Curtis Kingwood,

        *Plaintiff,*

    v.

City of Philadelphia, et al.,

        *Defendants.*

CIVIL ACTION
NO. 24-4681

Ronald Thomas,

                *Plaintiff,*

    v.

City of Philadelphia, et al.,

                *Defendants.*

CIVIL ACTION
NO. 24-4914

---

Donta Regusters,

                *Plaintiff,*

    v.

City of Philadelphia, et al.,

                *Defendants.*

CIVIL ACTION
NO. 25-865

---

Corey Gibbs,

                *Plaintiff,*

    v.

City of Philadelphia, et al.,

                *Defendants.*

CIVIL ACTION
NO. 25-2810

---

Neftali Velazquez,

                *Plaintiff,*

    v.

City of Philadelphia, et al.,

                *Defendants.*

CIVIL ACTION
NO. 25-3720

**Pappert, J.**                                                                    **June 25, 2026**

### MEMORANDUM

The plaintiffs sued the City of Philadelphia alleging the City, among other things, maintained an unconstitutional custom of homicide detectives coercing and fabricating suspect and witness statements during murder investigations in the early 2000s. The Court granted summary judgment to the City on this unconstitutional-custom claim and the plaintiffs seek reconsideration of that decision. In the alternative, the plaintiffs ask the Court to certify its order for immediate appeal. The Court denies their motion in all respects.

I

Jamaal Simmons, James Frazier, Arkel Garcia, Marvin Hill, Rafiq Dixon, Dwyane Handy, Curtis Kingwood, Ronald Thomas, Donta Regusters, Corey Gibbs and Neftali Velazquez were convicted of murder in Pennsylvania state court between 2012 and 2016. Darnell Powell was arrested for murder in 2015. Philip Nordo, who joined the Philadelphia Police Department in 1997 and became a homicide detective in 2009, participated in the investigations that led to the plaintiffs' arrests. Nordo was fired for police-related misconduct in 2017 and later a jury convicted him of, among other crimes, sexual assault. The plaintiffs' convictions or arrests were vacated or dismissed at various points after Nordo's firing.

The plaintiffs sued the City under 42 U.S.C. § 1983 alleging primarily that Nordo and other detectives coerced or fabricated their confessions or witness statements, leading to their wrongful convictions or prosecutions. Section 1983, however, does not allow plaintiffs to hold a municipality automatically liable for the

1

unconstitutional actions of its employees under a theory of vicarious liability.  *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978).  Plaintiffs can hold municipalities liable "only for their *own* illegal acts."  *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citation omitted).  When a municipal officer harms a private party, therefore, that party must connect the officer's conduct to a municipal policy or custom.  *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997).  Plaintiffs may establish such a policy or custom in different ways.  They may show a city knowingly acquiesced in an unconstitutional custom, *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1481 (3d Cir. 1990), or inadequately trained, supervised or disciplined the employees who caused them harm, *Est. of Roman v. City of Newark*, 914 F.3d 789, 798–99 (3d Cir. 2019).

The plaintiffs alleged the City maintained an (1) unconstitutional custom of homicide detectives coercing or fabricating suspect and witness statements during murder investigations; (2) unofficial custom of failing to train detectives about the proper ways to interrogate suspects and witnesses; (3) unofficial custom of failing to supervise detectives during suspect and witness interviews; and (4) unofficial custom of failing to investigate and discipline Nordo.  *McCoy v. City of Philadelphia*, No. 21-1458, 2026 WL 767139, at *2–10 (E.D. Pa. Mar. 18, 2026).  After discovery, the City and the plaintiffs moved for summary judgment.  *Id.* at *1.  The Court granted judgment to the City on the unconstitutional-custom, failure-to-supervise and failure-to-discipline claims and denied judgment to the City and the plaintiffs on the failure-to-train claim.  *Id.*

Relevant here is the plaintiffs' unconstitutional-custom claim.  To prevail, they had to show, among other things, that on numerous occasions before the alleged

2

constitutional violations in their cases homicide detectives coerced or fabricated suspect or witness statements during murder investigations. *Id.* at *2. The plaintiffs attempted to make this showing by referring to two-hundred-and-five paragraphs in their submission of additional facts. *Id.* *4. Those paragraphs described twenty-six cases, which, according to the plaintiffs, involved "overturned convictions" and detective "coercion" throughout the early 2000s. *Id.* (citation omitted). The Court held the plaintiffs failed to defeat summary judgment by citing two-hundred-and-five paragraphs in a submission of facts without explaining their import[1] and that the twenty-six cases described in those paragraphs were irrelevant or supported by conclusory evidence or inadmissible hearsay. *Id.* at *4–7. Four cases were irrelevant because they did not involve detectives coercing or fabricating statements during murder investigations. *Id.* at *5. Two cases relied on conclusory allegations that would not permit a reasonable jury to conclude that detectives had in fact coerced or fabricated statements. *Id.* And the remaining twenty cases were supported by inadmissible hearsay, including civil complaints, testimony in criminal and post-conviction proceedings and statements and declarations in or associated with briefs filed by the Philadelphia District Attorney's Office in post-conviction proceedings. *Id.* at *5–6.

---

[1]     Plaintiffs inadequately briefed the unconstitutional-custom claim. They argued that they "identified dozens of wrongful convictions caused by homicide detectives during the relevant timeframe," *McCoy*, 2026 WL 767139, at *4 (quotation modified), relying broadly on the two-hundred-and-five paragraphs. But they failed to explain how the cases discussed in those paragraphs showed detectives coerced or fabricated suspect or witness statements during murder investigations. *Id.* As the Court held, a brief's stray reference to facts—with no explanation of their import—fails to defeat a summary judgment motion. *Id.* "District judges are not archaeologists. They need not excavate masses of papers in search of revealing tidbits . . . ." *Nw. Nat'l Ins. v. Baltes*, 15 F.3d 660, 662 (7th Cir. 1994). The Court could deny reconsideration on this basis alone.

II

The plaintiffs urge the Court to reconsider its hearsay holding, arguing that what they cited—civil complaints, former testimony and post-conviction materials— would permit a reasonable jury to find an unconstitutional custom. Assuming the Court may consider their motion,[2] they must show the Court committed a "clear error of law." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). They fail to do so.

A

The plaintiffs first point out that the City objected to their unconstitutional-custom claim on hearsay grounds in its reply brief. But the Court told the plaintiffs it would consider the hearsay issue and gave them an opportunity to respond.

In moving for summary judgment, the City focused primarily on the plaintiffs' failure-to-train, failure-to-supervise and failure-to-discipline claims. (Def.'s Mot. for Summ. J. at 39–53, Dkt. No. 129.) The City also moved for judgment "in an abundance of caution" on "any suggestion that the City had a custom of municipal acquiescence in detective misconduct." (*Id.* at 53.) The City's briefing on the plaintiffs' unconstitutional-custom claim was conclusory, but in fairness to the City, the plaintiffs' *Monell* claims have been a moving target throughout the litigation. In discovery, the City asked the plaintiffs to define their *Monell* claims, (Pls.' Answers to Def.'s

---

[2]     Local Rule of Civil Procedure 7.1(g) states that "[m]otions for reconsideration . . . shall be served and filed within fourteen (14) days after the entry of the order concerned." The Court entered its order on March 18, 2026, (Dkt. No. 181), and the plaintiffs moved for reconsideration on April 13, 2026, (Dkt. No. 183), more than 14 days after March 18. The plaintiffs do not cite any federal rule of civil procedure which might permit the Court to consider their motion, such as Rule 54(b). *See* Fed. R. Civ. P. 54(b) (stating that "any order . . . that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment"). The Court interprets the timeliness of the motion in plaintiffs' favor and addresses its merits.

Contention Interrogatories at 21, Dkt. No. 129-31), and the plaintiffs responded by purportedly describing seven, most of which were unfocused and defined at a high level of generality, *see, e.g.*, (*id.* at 22) (alleging the City had a custom of securing charges by any means necessary); *id.* (the City had a custom of failing to discipline officers who engaged in illegal conduct); *id.* (the City had a custom of failing to train officers with respect to investigative powers). The plaintiffs also described their unconstitutional-custom claim rather vaguely in their summary-judgment briefing, stating the City had a custom of detectives engaging in misconduct. The Court had to get the plaintiffs to identify the precise misconduct—coercing and fabricating suspect and witness statements—during oral argument. *McCoy*, 2026 WL 767139, at *2 n.1. Also during oral argument, the plaintiffs tried to raise a new, unbriefed custom claim. *Id.* Like the Court, the City apparently had a difficult time understanding the plaintiffs' *Monell* theories.

That aside, the plaintiffs responded to the City's request for judgment on their unconstitutional-custom claim in two ways. First, they argued the City improperly narrowed the claim to whether the City had a custom of acquiescing in *Nordo's* misconduct. (Pls.' Resp. to Def.'s Mot. for Summ. J. at 23, Email Copy.) (The Court thought this argument meritless because the City focused on both Nordo and homicide detectives more generally.) Second, the plaintiffs argued that they presented sufficient evidence to show the City had a custom of detectives coercing and fabricating suspect and witness statements during murder investigations. (*Id.*) And in support, they pointed to the infamous two-hundred-and-five paragraphs in their submission of additional facts. (*Id.*) Again, those paragraphs relied on out-of-court statements from

prior litigation, including civil complaints, testimony and post-conviction materials, such as briefs and declarations. *McCoy*, 2026 WL 767139, at *5–6. The City replied by asserting a hearsay objection to each paragraph, (Def.'s Resp. to Pls.' Submission of Additional Facts at 56–139, Dkt. No. 164-1), and then briefing the hearsay issue in its reply, (Def.'s Reply to Pls.' Resp. at 19–39, Dkt. No. 164).

The plaintiffs argue, incorrectly, that the Court improperly considered the City's hearsay argument because the City raised the objection in its reply brief. It is not uncommon for district courts to encounter hearsay objections in reply briefs at summary judgment. Occasionally, as here, a party moves for judgment asserting that the other party has no evidence to support his claim, the opposing party responds by citing certain evidence and the moving party then objects, in a reply brief, to that evidence on hearsay grounds. *See Smith v. Bray*, 681 F.3d 888, 902–03 (7th Cir. 2012); 11 James Wm. Moore et al., *Moore's Federal Practice* § 56.91[6], LEXIS (database updated 2026). As a matter of good practice, courts in this situation should "adopt mechanisms that will allow parties to efficiently . . . respond" to the hearsay objection. 11 James Wm. Moore et al., *supra*, § 56.91[6]. Two such mechanisms include oral argument and a sur-reply. *Id.* A court may also invoke Federal Rule of Civil Procedure 56(f), which allows a court to grant judgment on grounds not raised by a party after giving "notice and a reasonable time to respond." At bottom, a court need only ensure that it does not decide an issue "raised in such a manner that the losing party never had a real chance to respond." *Smith*, 681 F.3d at 903.

The plaintiffs had a real chance to address the City's hearsay objections. To begin, the Court told the plaintiffs that it would consider the City's hearsay arguments

while adjudicating their unconstitutional-custom claim.  Notice does not require a district court to send the targeted party a "formal document called 'notice'" nor does it require the court to say the magic words "'you are on notice.'"  *Nat'l Expositions, Inc. v. Crowley Mar. Corp.*, 824 F.2d 131, 133 (1st Cir. 1987).  Notice means the "targeted party had reason to believe the court might reach the issue."  *Gibson v. Mayor & Council of Wilmington*, 355 F.3d 215, 223 (3d Cir. 2004) (citation omitted).  At oral argument, the Court explained to the parties that the City moved for summary judgment on the custom claim, the plaintiffs' "responded and put forth evidence they believe shows a custom," and the City objected to that evidence.  (Tr. of Oral Arg. at 101:23–25, 102:1–4, 104:1–7, Dkt. No. 178.)  Given the custom claim had been fully briefed, the Court told the parties it would take it up on the merits.  (*Id.* at 104:8–13.)  It then said if the plaintiffs "disagree[d]" with this decision they should "let [the Court] know," (*id.* at 104:15), but they never objected.  The plaintiffs fully argued the City's hearsay objection.  They conceded that the civil complaints, former testimony and post-conviction materials were out-of-court statements offered for the truth, but contended it would be theoretically possible for them to reduce the hearsay to admissible evidence at trial.  *See, e.g.,* (*id.* at 125:2–25).  The plaintiffs knew the Court would decide whether or not they presented admissible evidence to establish the City maintained an unconstitutional custom of homicide detectives coercing and fabricating suspect and witness statements during murder investigations.  *Gibson*, 355 F.3d at 223.

The Court gave the plaintiffs reasonable time to respond to the City's hearsay objections.  A reasonable time to respond means the targeted party had "a fair opportunity to put its best foot forward."  *Id.* (citation omitted).  At oral argument, the

7

Court told the plaintiffs that if they wanted to say anything in a "sur-reply" or "now" (i.e., during oral argument), they would "be given all the opportunities they want." (Tr. of Oral Arg. at 104:10–12.)  Again, the plaintiffs made all their points to support their contention that the hearsay evidence should be considered admissible, *see, e.g.*, (*id.* at 124–25), and, perhaps for that reason, chose not to submit a sur-reply.  In fact, one week after oral argument, the plaintiffs sent a letter to the Court complaining that the City raised its hearsay objection in its reply brief.  (Letter to the Court from Julia Ronnebaum, Mar. 3, 2026.)  The Court issued its opinion more than three weeks after oral argument.  Because the plaintiffs had "all the opportunities they want[ed]" to respond to the City's hearsay objections including oral argument and the chance to file a sur-reply, they had a "fair opportunity to put [their] best foot forward." *Gibson*, 355 F.3d at 223 (citation omitted).

In response, the plaintiffs invoke *Lee v. Sixth Mount Zion Baptist Church of Pittsburgh*, 903 F.3d 113 (3d Cir. 2018), arguing that the "Third Circuit has made clear that [notice and an] opportunity should come in writing," (Pls.' Mot. for Reconsideration at 13, Dkt. No. 183).  In *Lee*, the Third Circuit Court of Appeals held that a district court provided adequate notice and an opportunity to respond when it issued an order asking the parties for supplemental briefing on a particular issue and cited Rule 56(f). *Lee*, 903 F.3d at 118.  The Third Circuit never said notice and an opportunity to respond "should come in writing."  That a district court may provide adequate notice and an opportunity to respond by issuing a written order does not mean it *must* issue such an order.  *See Nat'l Expositions, Inc.*, 824 F.2d at 133; *see also Moore v. Equitrans,*

8

*L.P.*, 27 F.4th 211, 224 (4th Cir. 2022) (notice and an opportunity to respond need not come in a "formal document") (citation omitted).

B

The plaintiffs next argue the Court violated the party-presentation principle, which provides that courts may "decide only those issues argued by interested and motivated litigants." *United States v. Dowdell*, 70 F.4th 134, 145 (3d Cir. 2023). Courts violate the party-presentation rule when they grant judgment on an argument a party never asserted and the opposing party never had a chance to address. *Clark v. Sweeney*, 146 S. Ct. 410, 412 (2025) (per curiam).

The plaintiffs contend, curiously, that the City never objected to their unconstitutional-custom claim on hearsay grounds, asserting: "Only the Court itself raised, for the first time at the hearing, the issue of admissibility as a possible basis for judgment." (Pls.' Mot. for Reconsideration at 12–13.) This is false. Again, after the plaintiffs cited in their submission of additional facts two-hundred-and-five paragraphs to support their custom claim, the City objected to each paragraph on hearsay grounds, (Def.'s Resp. to Pls.' Submission of Additional Facts at 56–139), and briefed those objections in its reply brief, (Def.'s Reply to Pls.' Resp. at 19–39). The plaintiffs also more than addressed the City's hearsay arguments during oral argument and had the chance to file a sur-reply. A court does not violate the party-presentation rule by adjudicating an issue raised by one party that the other party had an opportunity to address during oral argument and in a sur-reply. *Margolin v. Nat'l Ass'n of Immigr. Judges*, 146 S. Ct. 1285, 1288 (2026) (per curiam).

9

C

Lastly, the plaintiffs incorrectly claim the Court erred in refusing to consider the hearsay they relied upon.

1

To prevail on their unconstitutional-custom claim, the plaintiffs had to show that on numerous occasions before the alleged constitutional violations in their cases homicide detectives had coerced or fabricated suspect or witness statements. *McCoy*, 2026 WL 767139, at \*2. They attempted to make this showing by citing the twenty-six "overturned convictions" involving police "coercion." *Id.* at \*4. They pointed to civil complaints, testimony in pre-trial criminal proceedings, testimony in criminal trials, testimony in post-conviction proceedings, representations in post-conviction briefs filed by the Philadelphia District Attorney's Office and declarations filed in post-conviction proceedings. *Id.* at \*5–6. In these materials, individuals largely alleged that detectives had coerced or fabricated their statements during homicide investigations. *Id.*

The Court refused to consider this purported evidence, holding first that it was hearsay. *Id.* at \*6. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. *Id.* The civil complaints, former testimony and post-conviction materials are out-of-court statements. *Id.* And the plaintiffs offered them for the truth—to show that on numerous prior occasions homicide detectives had coerced or fabricated suspect or witness statements. *Id.* The Court then explained that it may consider hearsay at summary judgment only if it would be admissible at trial. *Id.* At oral argument, counsel argued the hearsay would be admissible because counsel may be able to find the declarants and have them testify at trial. *Id.* He said that because the

10

"civil rights community" in Philadelphia is "not that large," he and plaintiffs' numerous other lawyers could try to contact the declarants. (Tr. of Oral Arg. at 125:2–25.) The Court rejected this argument, holding the plaintiffs failed to prove the declarants would in fact be available to testify. *Id.*

2

Federal Rule of Civil Procedure 56 directs a district court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This language compels judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A nonmoving party fails to satisfy this standard if "the record taken as a whole could not lead a rational trier of fact to find" in his favor. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (citation omitted). Implicit in these standards is that a party may rely on evidence only if it would be admissible at trial. *Williams v. Borough of West Chester*, 891 F.2d 458, 465 n.12 (3d Cir. 1989). If "there is no admissible evidence as to a material fact, there can be no dispute as to that fact, and hence no need for a trial to resolve a dispute." 11 James Wm. Moore et al., *supra*, § 56.91[1]. Hearsay is generally inadmissible. Fed. R. Evid. 802. Thus, when a party relies on hearsay at summary judgment, he must show it would be admissible at trial. *Williams*, 891 F.2d at 465 n.12. Hearsay may be admissible if it fits into an exclusion or an exception. Fed. R. Evid. 801(c), (d), 802, 803, 804.

11

A party may also reduce hearsay to admissible evidence by calling the declarant to testify directly to the matter at trial. *Williams*, 891 F.2d at 465 n.12; *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012). A party who claims he can reduce hearsay to admissible evidence by bringing the declarant into court must show the declarant "will in fact be available to testify at trial." 11 James Wm. Moore et al., *supra*, § 56.91[3A]. If it is "wholly speculative" whether a declarant is available to testify at trial and the declarant's out-of-court statement is essential to prove a party's claim, the party fails to show a genuine dispute of a material fact requiring trial. *Id.*

Courts routinely describe these principles. The Third Circuit Court of Appeals, for example, has held that a party may rely on hearsay at summary judgment if he shows the declarant's "*availability to testify*." *Fraternal Ord. of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 239 (3d Cir. 2016) (emphasis added); *see also Benjamin v. Thomas*, 766 F. App'x 834, 838 (11th Cir. 2019) (per curiam) (courts "may consider on summary judgment evidence in the form of inadmissible hearsay when the declarant *is available to testify at trial* directly about the matter at issue") (emphasis added); *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016) (when a party claims he can reduce hearsay to admissible evidence by having the declarant testify in court, the party must show the declarant is "*available to testify at trial*") (emphasis added); *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997) (hearsay may be "used as evidence in opposition to summary judgment" only if there is "*some showing*" or it is "obvious" the hearsay "can be replaced by proper evidence at trial") (emphasis added); *Wi-LAN Inc. v. Sharp Elecs. Corp.*, 992 F.3d 1366, 1372 (Fed. Cir. 2021) (if a party attempts to rely on hearsay at summary judgment by asserting the

12

declarant will testify at trial, he must "establish that the declarant[] *would be available to testify at trial*") (emphasis added).

District courts have similarly recognized a "party may show that hearsay could be presented in admissible form by identifying the third-party declarant and confirming that the declarant *will be available to testify at trial*." *Dunigan v. Miss. Valley State Univ.*, No. 19-CV-33, 2020 WL 9606765, at *4 (N.D. Miss. Oct. 16, 2020) (emphasis added); *see also Damiano v. Scranton Sch. Dist.*, No. 13-2635, 2016 WL 3227254, at *3 (M.D. Pa. June 13, 2016) (explaining hearsay may be considered if the "declarant *would be available at trial*") (emphasis added); *In re Chiquita Brands Int'l, Inc. Alien Torts Statute & S'holder Litig.*, No. 08-01916, 2022 WL 18957608, at *15 (S.D. Fla. Dec. 15, 2022) ("A party may proffer hearsay evidence in opposing summary judgment . . . where the proponent can identify a specific witness . . . *who is available to testify at trial*.") (emphasis added); *Strategic Execs. Agency, LLC v. Avalere Health, LLC*, No. 18-10459, 2020 WL 4354228, at *5 (C.D. Cal. May 29, 2020) (a party may reduce hearsay to admissible evidence through live testimony if he shows the "hearsay declarant[] *would be available to testify at trial*") (emphasis added).

In *Burch v. Blockbuster*, No. CV-2-BE-2990, 2005 WL 8158056 (N.D. Ala. July 15, 2005), the plaintiffs sued Blockbuster arguing the company failed to maintain adequate security measures leading to their decedents' murders. *Id.* at *1. At summary judgment, Blockbuster sought to rely on the "testimony of numerous witnesses" from the murderer's criminal trial. *Id.* The District Court held the hearsay could not be reduced to admissible evidence because Blockbuster "made no attempt to show that any of the witnesses, none of whom are parties, will be available at trial." *Id.*

13

at *2.  In other words, the District Court had "no information or evidence as to the availability of the witnesses."  *Id.*  Similarly, in *Howley v. Experian Information Solutions, Inc.*, 813 F. Supp. 2d 629 (D.N.J. 2011), the plaintiffs sued Experian alleging violations of the Fair Credit Reporting Act.  *Id.* at 631.  At summary judgment, the plaintiffs sought to rely on a letter written by an identified author, arguing he could testify at trial.  *Id.* at 636.  The District Court stated the plaintiffs had to show the author "would be available for trial."  *Id.* at 637.  The plaintiffs suggested the author may be able to be "found" and then he "would be able to testify."  *Id.*  The court rejected this argument, holding that the plaintiffs "offered no evidence" that the author "is available to testify at trial."  *Id.*  The "law requires more than just a remote possibility" that a hearsay declarant could later testify in court; plaintiffs instead "need to show that some likelihood exists that he will appear at trial and testify."  *Id.*

Plaintiffs made no attempt to show any of the declarants would be available to testify at trial.  They offered no information or evidence as to their availability, and they certainly did not show even "some likelihood" they could, much less would, appear and testify.  Counsel stated only that they could track these people down through the "civil rights community," whatever that means.  The declarants, none of whom are parties in this case, were allegedly associated with decades-old criminal convictions, and the plaintiffs' failure, after years of discovery, to obtain affidavits or declarations from the people they claim to be able to find is telling.  Because the plaintiffs failed to show their hearsay evidence would be admissible at trial, the Court properly refused to consider it.

14

3

The plaintiffs' counterarguments also fall flat.  They first contend, without any legal support, that a party relying on hearsay "need not fight out [its] admissibility" because district courts may not make "actual determinations as to admissibility" at summary judgment.  (Pls.' Mot. for Reconsideration at 14–15.)  But again, a party may rely on evidence at summary judgment only if it would be admissible at trial.  *Williams*, 891 F.2d at 465 n.12.  If "there is no admissible evidence as to a material fact, there can be no dispute as to that fact, and hence no need for a trial to resolve a dispute."  11 James Wm. Moore et al., *supra*, § 56.91[1].  In fact, Federal Rule of Civil Procedure 56 permits a party at summary judgment to argue that "an adverse party cannot produce admissible evidence" to support his claim.  Fed. R. Civ. P. 56(c)(1)(B).  Thus, when a party raises a hearsay objection, whether the hearsay will be admissible at trial is a "necessary condition" to its consideration at summary judgment.  *Jones*, 683 F.3d at 1294 n.37.  There is no doubt that district courts may make "actual determinations as to admissibility" at summary judgment.  *See, e.g.*, *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 n.3 (7th Cir. 2017) ("Admissibility is a threshold question because a court may consider only admissible evidence in assessing a motion for summary judgment."); *Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167, 175–76 (5th Cir. 1990) (explaining the "admissibility of evidence on a motion for summary judgment is subject to the same rules that govern the admissibility of evidence at trial").

The plaintiffs next argue they need only identify some way by which hearsay could theoretically be reduced to admissible evidence at trial.  In other words, they believe district courts must consider "possibly admissible evidence" at summary

15

judgment.  (Pls.' Mot. for Reconsideration at 16.)  For example, prompted by the Court's opinion, the plaintiffs point out that there is a hearsay exception for former testimony. *See* Fed. R. Evid. 804(a)–(b)(1); *McCoy*, 2026 WL 767139, at \*7 (explaining the plaintiffs could have tried to invoke Rule 804(b)(1)).  Because they relied in part on the former testimony of witnesses in criminal cases and post-conviction proceedings, and because former testimony can be made admissible through Rule 804(b)(1), the plaintiffs say, the Court should have considered the former testimony they cited.

But Rule 804(b)(1) has specific requirements, and there is no authority for the proposition that a court may consider hearsay at summary judgment if it could theoretically be reduced to admissible evidence at trial.  Summary judgment is "the put up or shut up time in litigation."  *Brown v. CACH, LLC*, 94 F.4th 665, 667 (7th Cir. 2024) (citation omitted).  When a party relies on hearsay at summary judgment, he must "demonstrate that [he] will *be able to* reduce it to an admissible form at trial." *Jasmin v. N.J. Econ. Dev. Auth.*, No. 16-1002, 2020 WL 3411171, at \*8 (D.N.J. June 22, 2020).

Rule 804(b)(1) states that if a declarant is unavailable as a witness, his former testimony is excluded from the rule against hearsay if it "was given as a witness at a trial, hearing, or lawful deposition" and is "now offered against a party who had—or, in a civil case, whose predecessor in interest had—an opportunity and similar motive to develop it by direct, cross-, or redirect examination."  Fed. R. Evid. 804(b)(1).  When a party relies on a declarant's former testimony at summary judgment and invokes Rule 804(b)(1) as an exception to the rule against hearsay, courts ask whether the party has satisfied Rule 804(b)(1)'s requirements—that is, whether the declarant is unavailable

16

and the party against whom the testimony is offered (or in a civil case, his predecessor in interest) had an opportunity and similar motive to develop it.  In *New Jersey Turnpike Authority v. PPG Industries, Inc.*, 197 F.3d 96 (3d Cir. 1999), for example, the Turnpike Authority sued PPG claiming it contaminated roadways with hazardous waste.  *Id.* at 100.  At summary judgment, the Turnpike Authority sought to rely on "deposition testimony from other litigation."  *Id.* at 110.  To satisfy the former testimony exception, the Third Circuit explained the Turnpike Authority had to show: (1) the declarant was unavailable, (2) the testimony was taken at a hearing, deposition, or civil action or proceeding and (3) PPG, or its predecessor in interest, had an opportunity and similar motive to develop the testimony.  *Id.*  The Third Circuit held the Turnpike Authority "has not even attempted to satisfy the[] first or third requirement regarding the admissibility of the depositions in this proceeding, and given the paucity of information in the record before us as to the whereabouts of these witnesses . . . it is impossible for us to determine on our own that these depositions are admissible."  *Id.*  Other courts similarly consider former testimony at summary judgment only if the party relying on it satisfies Rule 804(b)(1)'s requirements.  *See, e.g.*, *McPherson v. Patton*, 176 F.4th 779, 786–90 (4th Cir. 2026).  Here, the plaintiffs made no attempt to show under Rule 804(b)(1) that the declarants are unavailable and the City (or its predecessor in interest) had an opportunity and similar motive to develop their testimony.

Finally, the plaintiffs invoke *Lexington Insurance Company v. Western Pennsylvania Hospital*, 423 F.3d 318 (3d Cir. 2005), where Lexington sued West Penn seeking a declaration that it did not have to indemnify West Penn for a medical

17

malpractice claim. *Id.* at 320.  At summary judgment, West Penn sought to rely on an internal Lexington document called an HPL Create Sheet, which contained certain information, including the name of the insured, the claimant, the policy number and a space for description of the loss. *Id.* at 327–28.  Lexington argued the document was inadmissible because it was hearsay. *Id.* at 328.  Assuming the document was hearsay, the Third Circuit held it was admissible because it satisfied the party-opponent exception to the rule against hearsay. *Id.* at 330 n.7.  Here, by contrast, the plaintiffs failed to show an exception to the rule against hearsay applied.  The plaintiffs counter that *Lexington* stands for the proposition that district courts must "construe[] fact questions about admissibility in favor of the nonmoving party" at summary judgment.  (Pls.' Mot. for Reconsideration at 16.)  The Court is unsure what this means, and *Lexington* did not use that phrase.  Judges determine admissibility questions, generally using a preponderance of the evidence standard. *See* Fed. R. Evid. 104(a).  Here, the plaintiffs offered *no* facts to show they could reduce the hearsay they relied upon into admissible evidence.

4

Perhaps most importantly, the plaintiffs' purported evidence demonstrates the importance of the rule against hearsay.  An out-of-court statement offered for the truth is generally inadmissible because "the declarant's word is not subject to cross-examination" and "he is not available in order that his demeanor and credibility may be assessed by the jury." *Chambers v. Mississippi*, 410 U.S. 284, 298 (1973).  As Justice Story explained, hearsay is "not upon oath"; the "party affected by it has no opportunity of cross-examination"; it "supposes better evidence"; it is "peculiarly liable to be

18

obtained by fraudulent contrivances"; and "above all," it is "exceedingly infirm, unsatisfactory and intrinsically weak in its very nature and character." *Ellicott v. Pearl*, 35 U.S. (10 Pet.) 412, 436 (1836).  Chief Justice Marshall similarly observed hearsay is dangerous because it "supposes some better testimony which might be adduced in the particular case" and "frauds . . . might be practiced under its cover." *Queen v. Hepburn*, 11 U.S. (7 Cranch) 290, 295–96 (1813).

The plaintiffs built their unconstitutional-custom claim on three general categories of hearsay.  They first cited civil complaints in which individuals claimed detectives coerced or falsified statements during investigations.  But the City had no opportunity to cross-examine the plaintiffs in these cases.  Civil complaints, moreover, are weak in their very nature.  They do not contain evidence; they are merely allegations, which time and discovery may reveal to be inaccurate or plain false.

The plaintiffs also relied on statements in or associated with briefs filed by the Philadelphia District Attorney's Office in Post Conviction Relief Act proceedings.  For example, they cited a post-conviction brief conceding that a convicted murderer was entitled to a new trial.  (Commonwealth's Ans. to Second Am. Pet., Dkt. No. 156-114.)  The District Attorney's Office represented that a witness told it during an interview that detectives coerced her into signing a false statement.  (*Id.* at 18–19.)  But again, the City had no opportunity to cross-examine this witness.  And fraud might be practiced under the cover of the District Attorney's brief.  *Queen*, 11 U.S. (7 Cranch) at 296.  The Supreme Court of Pennsylvania recently held that concessions filed by the Philadelphia District Attorney's Office may not be reliable.  In *Commonwealth v. Brown*, --- A.3d ----, 2026 WL 1737056 (Pa. 2026), the Court scrutinized the District

19

Attorney's practice of conceding relief in post-conviction proceedings and expressed concerns with "whether the DAO's concessions are reliable, that is, whether they are actually called for under the facts and the law." *Id.* at 43. If a "concession is not reliable—such as when it is made for purely personal, political, ideological, policy or other non-legal reasons—there is a grave risk it will result in the erroneous grant of relief." *Id.*

The Court analyzed numerous concessions, finding the District Attorney's Office had "conceded relief where none was warranted and engaged in . . . unreliable conduct." *Id.* at *34. Going further, the Court stated that in several cases, the District Attorney's Office violated its duty of candor by making false statements in concessions. *Id.* at *42. The Third Circuit Court of Appeals has similarly rebuked the District Attorney's Office for misrepresenting facts in concessions. *Wharton v. Superintendent Graterford SCI*, 95 F.4th 140, 143–44 (3d Cir. 2024).[3] All this is to say that "adhere[nce] to the established rules of evidence" protect the "administration of public justice" by ensuring that hearsay evidence, such as someone's alleged statement to the District Attorney's Office, is tested by cross-examination. *Coleman v. Southwick*, 9 Johns. 45, 50 (N.Y. 1812).

Lastly, the plaintiffs relied on former testimony. Several individuals implicated someone in a murder, then recanted during criminal or post-conviction proceedings claiming they had been coerced. But recantation testimony must be viewed "with a careful eye" because it is "very often unreliable." *Johnson v. Mahanoy*, 144 F.4th 178, 189 (3d Cir. 2025). "Witnesses may be pressured by the defendant's friends and family

---

[3] Plaintiffs have disappointingly also misled the Court. They represented that the twenty-six cases they cited concerned overturned convictions involving detective coercion. *McCoy*, 2026 WL 767139, at *4. But after looking into these cases, the Court learned that many did not. *Id.*

into recanting." *Id.* That is why it is preferable for a declarant who recanted in a prior criminal or post-conviction proceeding to come into court and testify; then the jury can evaluate whether he or she is credible. Rather than satisfying Rule 804(b)(1)'s requirements designed to ensure the reliability of former testimony, the plaintiffs hope instead to elide summary judgment by pointing to long-ago allegations by people who they cannot confirm will be available to testify at trial.

## III

If the Court refuses to reconsider its unconstitutional-custom holding, the plaintiffs ask the Court to certify its summary-judgment order for immediate appeal. Section 1292(b) of Title 28 provides: "When a district judge, in making in a civil action an order not otherwise appealable . . . shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and . . . an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order." 28 U.S.C. § 1292(b). Though a judge must certify its order for immediate appeal in the order itself, the appellate rules permit a court to modify an order for certification. Fed. R. App. P. 5(a)(3).

There is no "substantial ground for difference of opinion." The plaintiffs argue the Court's hearsay holding contravenes Third Circuit precedent. Yet they cite nothing to support their argument. The plaintiffs also invoke four district court opinions, which denied summary judgment to the City on similar *Monell* claims. But those cases did not address whether plaintiffs may defeat summary judgment by relying on hearsay without showing the hearsay would be admissible at trial. *Hicks v. City of*

21

*Philadelphia*, 783 F. Supp. 3d 834, 858–64 (E.D. Pa. 2025); *Swainson v. City of Philadelphia*, No. 22-2163, 2025 WL 1854076, at *19–22 (E.D. Pa. July 2, 2025); *Abdullah v. City of Philadelphia*, No. 22-4143, 2025 WL 794444, at *9–11 (E.D. Pa. Mar. 12, 2025); *Thomas v. City of Philadelphia*, No. 17-4196, at *15–16 (E.D. Pa. Aug. 27, 2019).

The plaintiffs complain that the Court's decision "dooms" them to try their individual cases, (Pls.' Mot. for Reconsideration at 20), notwithstanding that their failure-to-train claim against the City survived summary judgment.  The Court is prepared to conduct as few or as many trials as necessary to ensure a fair and just result for all parties.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.

22